

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

**ENTERED**
**09/09/2015**

IN RE: §
JESUS  GUERRERO, *et al* § CASE NO: 15-70103
　　Debtor(s) §
§ CHAPTER  11

**MEMORANDUM OPINION**
**DENYING DEBTORS' MOTION TO RECONSIDER THIS COURT'S ORDER**
**DISMISSING CASE WITH PREJUDICE**

　　Debtors urge this Court to reconsider its order for the voluntary dismissal of Debtors'

Individual Chapter 11 case, where the order rendered prejudice against the Debtors from refiling

under Title 11 for 180 days pursuant to 11 U.S.C. § 109(g). Specifically, Debtors contend that

their voluntary dismissal here does not fall under the purview of § 109(g) and subsection (2),

which together require a 180-day bar on refiling where the voluntary dismissal follows a filing of

a request for relief from the automatic stay. Debtors argue that their request for dismissal had no

causal connection to the fact that a creditor here had filed a motion for relief from the automatic

stay, and thus the application of § 109(g) is improper. This Court shall now reconsider its Order

dismissing Debtors' case with prejudice. To the extent that any of the following findings of fact

constitute conclusions of law, they are adopted as such. To the extent that any of the following

conclusions of law constitute findings of fact, they are adopted as such.

**Factual Background**

　　1.　　Debtors Jesus and Alicia Guerrero filed for Chapter 13 bankruptcy protection on

March 2, 2015.  [ECF No. 1].

　　2.　　On April 24, 2015, during the pendency of the Chapter 13 case, Lone Star

National Bank filed a Motion for Relief from Stay under 11 U.S.C. § 362.  [ECF No. 25].

　　3.　　On May 20, 2015 and June 2, 2015, respectively, this Court entered an order,

[ECF No. 31], and amended order, [ECF No. 39], on the Motion for Relief from Stay. The essential effect of this Court's amended order was to impose conditions on the Debtors, failing which, the Stay would automatically terminate.

4.      On May 22, 2015, the Chapter 13 Trustee filed an Amended Motion To Dismiss the Chapter 13 case, primarily because the Debtors exceeded the Chapter 13 debt limits pursuant to 11 U.S.C. § 109(e).  [ECF No. 33].

5.      On June 11, 2015, the Debtors filed their response to the Trustee's Amended Motion to Dismiss, denying the Trustee's allegations.  [ECF No. 41].

6.      On July 2, 2015, Lone Star National Bank filed its Notice of Termination of Stay as To Specific Property.  [ECF No. 45].

7.      On June 18, 2015, the Court heard arguments on the Trustee's Amended Motion to Dismiss, which the Court took under advisement while resetting the dismissal hearing to July 23, 2015.  [ECF No. 43].

8.      On July 23, 2015, this Court ordered Debtors to convert their case to Chapter 11 by July 24, 2015, or the case would be dismissed.  [ECF No. 47].

9.      On July 24, 2015, Debtors filed their Motion to Convert their case from Chapter 13 to Individual Chapter 11, [ECF No. 48], which this Court granted.  [ECF No. 49].

10.      On July 27, 2015, Lone Star National Bank filed its second Notice of Termination of Stay.  [ECF No. 53].

11.      On August 4, 2015, Debtors filed an Emergency Motion to Dismiss their Chapter 11 case, [ECF No. 59], which was set for a hearing on August 10, 2015.  [ECF No. 63].

12.      On August 10, 2015, this Court conducted an evidentiary hearing wherein it cautioned Debtors' counsel that, since the voluntary motion to dismiss was filed following the

filing of a motion for relief from the automatic stay, the court would grant the dismissal with prejudice. Debtors offered no testimony at the hearing, and Debtors' counsel did not object to the dismissal with prejudice. This Court granted Debtors' voluntary request for dismissal, entering an order dismissing the Individual Chapter 11 case with prejudice against refiling as a debtor under Title 11 for 180 days, pursuant to 11 U.S.C. § 109(g).  [ECF No. 69].

13.    On August 12, 2015, Debtors filed a Motion to Reconsider the August 10, 2015 dismissal order, contending that Debtors' case does not fall under the requirements of a correct, in Debtors' view, reading of 11 U.S.C. § 109(g).  [ECF No. 70].  That Motion was amended on August 13, 2015.  [ECF No. 72].

14.    On August 28, 2015, the Court conducted an evidentiary hearing on Debtors' First Amended Expedited Motion To Reconsider Dismissing Individual Chapter 11 Case Following The Filing of A Request For Relief From The Automatic Stay ("the Motion"). Although the Debtors were contending, *inter alia*, that the requested dismissal was not "the result of the stay relief motion," [ECF No. 72, p. 8, ¶ 11], Debtors offered no evidence or testimony at this hearing. The Court was left to consider only the documents filed of record and legal arguments of counsel.

## I.    Analysis

This Court will now re-evaluate the basis for its entry of dismissal with prejudice in Debtors' Individual Chapter 11 case.

### A. Authority

This is a core proceeding for the purpose of 28 U.S.C. § 157 and a case that "arises under" title 11 for the purpose of 28 U.S.C. § 1334, because the construction of 11 U.S.C. §

109(g), its application to this case, and the content of this Court's original order all concern the final disposition of a bankruptcy proceeding and rights solely arising out of bankruptcy law. *See In re Lopez*, 2015 WL 1207012 (Bankr. S.D. Tex. Mar. 12, 2015); *see also In re Poplar Run Five Ltd. Partn.*, 192 B.R. 848, 855 (Bankr. E.D. Va. 1995). Additionally, this Court is empowered to reconsider and modify its orders pursuant to its own equitable powers, and more specifically pursuant to Fed. R. Bankr. P. 9024. Thus, this Court is empowered to reconsider its final order and issue final judgments on the matter.

### B.  Legal Analysis

Debtors' potential relief  of a dismissal with prejudice rests upon how 11 U.S.C. § 109(g)(2) must be construed. 11 U.S.C. § 109(g) states:

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g). This Court reads several elements and sub-elements from § 109(g)(2), each of which contain their own analytical framework. The first element requires that the debtor must *request* and *obtain* the *voluntary* dismissal of the case.[1]  § 109(g)(2). The second element is "*following,*" wherein the request and obtaining of dismissal from the first element must follow the third element. *Id.* The third and final element requires that there be a "*filing of a request for relief from the automatic stay.*" *Id.* Here, the Debtors do not dispute that they have voluntarily

---

[1] Though not at issue here, "request" and "obtain" produce separate inquiries, which may complicate an otherwise simple analysis with motion timing issues. *See In re Hicks*, 138 B.R. 505 (Bankr. D. Md. 1992) (the request and the grant of dismissal must each come after filing of the motion to lift stay).

sought dismissal of their Chapter 11 case, resulting in this Court ordering that the case be dismissed. Therefore, this Court is left to only consider the construction of the final two elements of § 109(g)(2). For the reasons set forth below, this Court finds that a proper reading of the statute clearly renders Debtors ineligible to refile for 180 days.

    1. *What does "following" mean?*

Debtors' objection to the entry of dismissal with prejudice primarily stems from their reliance on a particular reading of the word "following" in § 109(g)(2). In essence, Debtors claim that "following" should not be construed to create a chronological relationship between element one ("*request* and *obtain* the *voluntary* dismissal of the case*") and element three ("*filing of a request for relief from the automatic stay.*"). [ECF No. 72, p. 4]. Rather, Debtors believe that "following" demands a subjective inquiry into the causal relationship between the filing for relief from stay and the debtors' voluntary motion for dismissal. *Id.* The Debtors urge that a subjective test be read into § 109(g)(2), but the Fifth Circuit has not dispositively adopted an interpretive approach on this issue. *Matter of Ulmer*, 19 F.3d 234 (5th Cir. 1994); *In re Hackett*, 233 F.3d 574 (5th Cir. 2000) (per curiam). Debtors specifically argue that "following" means a causal "because of" rather than a chronological "after," and thereby generates a causation test. [ECF No. 72, p. 4]. However, not every court has addressed a § 109(g) eligibility issue from this angle. *Matter of Milton*, 82 B.R. 637, 639 (Bankr. S.D. Ga. 1988) (discussing the split in authority between courts as to whether a "good faith" standard should be written into the statutory language of § 109(g)(2)); *see also In re Richardson*, 217 B.R. 479 (Bankr. M.D. La. 1998) (surveying four judicial approaches to eligibility in § 109(g)(2)). Generally speaking, this Court views three approaches that courts implement on the "following" issue:

- "[F]ollowing" clearly means "after."
- "[F]ollowing" really means "because of."

- Regardless of the operative meaning of the words, the statute has a good faith exception.

This Court will begin its analysis by examining these approaches in more detail, and then it will proceed to explain its own reading. It must be noted that most cases interpreting § 109(g) are postured as challenges to the dismissal of a debtor's "second case" refiling, where the debtor argues that the facts of its "first case" do not fall under the ineligibility terms of the statute operating upon the "second case." The Motion before this Court requires the same treatment, as this Court's entry of dismissal with prejudice forbids a "second case" for 180-days, based on what this Court finds is a proper interpretation of § 109(g) applied to these circumstances.

**The Chronological Approach: "Following" as "After"**

Statutory construction may afford itself to many analytical tools and devices, but it must begin with an examination of the text, because courts must *presume* "that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). Moreover, courts "properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'" *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 388 (1993). Additionally, when the words of the statute are unambiguous, the judicial inquiry ends. *Germain*, 503 U.S. at 254. To determine the ambiguity of statutory language, a court looks to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Resort to an examination of legislative history is appropriate only to resolve statutory ambiguity, and in the final analysis, such examination must not produce a result demonstratively at odds with the purpose of the legislation. *In re Sorrell,* 359 B.R. 167, 173 (Bankr. S.D. Ohio 2007) (citing *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992); *Pennsylvania*

*Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552 (1990); *Kelly v. Robinson*, 479 U.S. 36 (1986)). Under the guidance of the Supreme Court, a court begins by determining whether the statute in question is ambiguous. If a statute unambiguously expresses one meaning, the analysis ends with a faithful application of that meaning, but if the statute appears ambiguous, then a court must avail itself of additional evidence to render its conclusion.

The Sixth Circuit Bankruptcy Appellate Panel exhibited an approach to § 109(g)(2) as unambiguous in *In re Andersson*.  209 B.R. 76 (6th Cir. BAP 1997).  There, the Appellate Panel presided over an appeal from a bankruptcy court's dismissal of the debtor's second petition, pursuant to § 109(g)(2). In that case, a creditor had filed a motion for relief from the automatic stay, but no order was ever entered with respect to the motion for relief, and the debtor thereafter requested and obtained voluntary dismissal.  *Id.* at 77.  In affirming the lower court's decision, the *Andersson* Panel found that the terms of § 109(g)(2) were unambiguous and, by implication, adopted the chronological reading of "following."  *Id.* at 78.  Notably, the Panel referred to its analysis as determining whether the statute has a mandatory or a discretionary application, which presents a line of thought echoed by other courts.[2]  *Id.*  Of course, courts can still conclude that "follow" means "after" where they have determined that the statute is ambiguous. *In re Richardson* exemplifies this approach.  217 B.R. 479, 486-87 (Bankr. M.D. La. 1998).  There, the court concluded that the meaning of § 109(g)(2) is ambiguous, but the balance of evidence rested in favor of reading "following" as "after."  *Id.*

---

[2] This Court takes issue with characterizing the question in this way, since the difference between giving an "after" versus a "because of" construction to "following" is really a matter of embracing a mechanical or discretionary application from the meaning of a word. Perhaps more importantly, a court's recitation of the "mandatory versus discretionary standard" argument tends to confuse readers, who seek clear guidance from the courts, into believing that the court is espousing a good faith exception that operates over the language of the statute, rather than construing the operative meanings of terms within the statute. While the analysis for a good faith exception could collapse into the "because of" test most of the time, that is no license to conflate two analytically distinct methods of relief.

### The Causation Approach: "Following" as "Because of"

A court may conclude, through statutory analysis, that the meaning of the word "following" is "because of," thereby making the statute operate a causal relationship test between the voluntary dismissal and the creditor's filing of a motion for relief from the stay. *In re Payton* best illustrates this approach.  481 B.R. 460 (Bankr. N.D. Ill. 2012).  In that case, the court presided over a second bankruptcy case filed within 180 days from the dismissal of the first bankruptcy case.  *Id.*  In the first case, a creditor filed a motion for relief from the automatic stay in order to repossess a car securing its claim.  *Id.* at 462.  The motion was granted, the car was surrendered, the debtor's plan was confirmed, and, three years after confirmation, the debtor requested and obtained a voluntary dismissal of her case.  *Id.*  The court noted that the general, everyday usage of "following," where it establishes a relationship between two items, can form three possible meanings. *Id.* at 463-464. These possible meanings include a "time sequence," "compliance," and "causation" relationship.  *Id.* at 464.  By way of simple examples, the court illustrated these possibilities with (chronological) "following their first class, the children went to their lockers," versus (compliance) "following the rules of etiquette, they congratulated one another," versus (causation) "[f]ollowing an embarrassing security breach earlier this month, business-oriented social networking site LinkedIn has been hit with a $5 million law-suit...."  *Id.*  The court then found that the American Heritage Dictionary, in its Second College Edition of 1982, supported all three inquired meanings.  *Payton*, 481 B.R. at 465.  The court believed that the variety of normal usages and established definitions demonstrated that there was no single obvious meaning of the word "following" when used as a modifying component in a sentence. *Id.*.  With the causation and chronological meanings standing on equal footing, the court proceeded to analyze context to resolve the ambiguity in favor of the most reasonable meaning

of the word. *Id.* The court reasoned that where "following" establishes a relationship between two discrete actions or events, it is most likely to set up a causation relationship, and then the court observed that § 109(g)(2) contains two discrete actions: the voluntary dismissal following the filing of the lift stay motion. *Id.* at 466. The court continued its analysis by noting Congress's purpose in enacting the provision, which was to prevent abusive repetitive filings by debtors who "voluntarily [dismiss] one case in which stay relief was sought and then fil[e] another case—obtain[ing] repetitive automatic stays to prevent a creditor from taking action against the debtor's property." *Id.* The court simply thought it would not be sensible to read the statute in a way that would be overbroad with respect to the intent of Congress; the chronological application could apply in cases where the debtor had no motive to abuse, or, at the very least, the creditor seeking the protection was at no risk of frustration. *Id.* Hence, the court felt that the most reasonable reading of "following" was the causal definition. *Payton*, 481 B.R. at 466. Thereafter, the court swiftly concluded that the facts of the case demonstrated that the debtor had not sought voluntary dismissal because a creditor had filed a motion for relief from the automatic stay three years prior, especially given that the property in question was already surrendered and the creditor fully satisfied. *Id.* at 467 . Thus, the court concluded that the debtor had not been rendered ineligible by § 109(g) under its adopted causation approach. *Id.*; *see, e.g.*, *In re Copman*, 161 B.R. 821, 824 (Bankr. E.D. Mo. 1993); *In re Durham*, 461 B.R. 139, 142 (Bankr. D. Mass. 2011).

### The Good Faith or Exception Approach

A number of courts have embraced the idea that, in spite of how the language operates, there are some situations in which courts should offer relief by refusing to apply the statute by its terms. The Ninth Circuit Bankruptcy Panel has declined to follow a "mandatory application of

section 109(g)(2)." *In re Luna,* 122 B.R. 575, 577 (9th Cir. BAP 1991). The *Luna* Panel reasoned that a mechanical application of the statute in that case would reward the creditor for acting in bad faith and punish the debtor for acting in good faith. *Id.* at 577. Accordingly, the Panel concluded that it must adopt a discretionary approach, because "legislative enactments should never be construed as establishing statutory schemes that are illogical, unjust, or capricious." *Id.* (citing *Bechtel Constr., Inc. v. United Bhd. of Carpenters & Joiners of America*, 812 F.2d 1220, 1225 (9th Cir. 1987)). Other courts have held that the statute should be applied in congruence with Congress's intent, rather than Congress's words. *In re Santana*, 110 B.R. 819 (Bankr. W.D. Mich. 1990); *Matter of Patton*, 49 B.R. 587 (Bankr. M.D. Ga. 1985). Some courts may interpret these lines of cases as an exercise in deciding whether § 109(g)(2) has a "good faith" exception. *See In re Hackett*, 1999 WL 294797 (E.D. La. May 10, 1999), *aff'd* 233 F.3d 574 (5th Cir. 2000) (per curiam); *Matter of Ulmer,* 19 F.3d at 236; *Matter of Milton*, 82 B.R. 637 (Bankr. S.D. Ga. 1988)

### Analyzing Non-Governing Discussions From Our Own Jurisdictions

The Fifth Circuit has entertained how it might possibly interpret § 109(g)(2), but it issued no dispositive holding on the matter. *Matter of Ulmer,* 19 F.3d at 236-37. There, the Fifth Circuit reviewed a lower court's issuance of sanctions under an abuse of discretion standard, where the debtor's attorney had been sanctioned for filing a second bankruptcy case in contravention to § 109(g) and subsection (2). *Id.* at 235. In analyzing the appropriateness of sanctions, the issue was whether § 109(g)(2) had a good faith exception, such that the attorney's filing for the debtor's second bankruptcy protection was not really violative of the statute, which would render sanctions inappropriate. *Id.* at 237. The Fifth Circuit concluded that, regardless of whether the statute really contained a good faith exception, the bankruptcy court's factual

findings showed that the debtor would not qualify under an exception where the record reflected no indication that the second bankruptcy petition was aimed at anything other than delaying the creditor's rights. *Id.* The Fifth Circuit's discussion of whether the good faith approach exists in the statute is uninstructive here. The Fifth Circuit indicated no favor to either interpretive method and declined to choose one, because that choice was not dispositive either way. *Id.* Importantly, since the Fifth Circuit's review over the sanctions issued by the bankruptcy court relies on whether the position a lawyer adopts is "unreasonable from the point of view both of existing law and of its possible extension, modification, or reversal," then it would not have mattered if the lawyer prevailed. *Id.* at 235. This is because the Fifth Circuit could have concluded that reading a good faith exception in § 109(g)(2) was reasonable, thus excusing the lawyer from sanctions while not actually endorsing that reading as the state of the law. Debtors before this Court also rely on another *dictum* from the *Ulmer* court, in which the Fifth Circuit asserted in a footnote that there was support in the language and purpose of § 109(g)(2) for a reading that the statute does not apply where the motion for relief from the stay is no longer "pending" before a court, because a court can reasonably conclude that the request for voluntary dismissal did not follow the former motion. *Ulmer*, 19 F.3d at 236, n. 9. Again, the Fifth Circuit declined to choose a reading over how this pending theory would affect an interpretation of any of the elements of § 109(g)(2), because the Fifth Circuit believed that the motion for relief from the automatic stay was obviously still pending before the bankruptcy court at the time the voluntary dismissal was requested and rendered. *Id.* at 236. After *Ulmer*, the Fifth Circuit, sitting *per curiam* over *In re Hackett,* had another occasion to discuss the possible meaning of § 109(g)(2), but again declined to issue a dispositive holding on this issue. *In re Hackett*, 233 F.3d at 574. In *In re Hackett*, the Fifth Circuit presided over an appeal from a district court's affirmation of a

bankruptcy court's dismissal of a debtor's bankruptcy case, pursuant to the terms of § 109(g)(2). *Id.* During the debtor's bankruptcy case, a creditor filed a motion for relief from stay, the resolution of which was delayed. *Id.* Faced with an attempt by the Trustee to dismiss his case for failure to abide by Chapter 13 deadlines, the debtor voluntarily dismissed his case on the very day set for the creditor's hearing for relief from stay. *Id.* The debtor then refiled under Chapter 11, and the Trustee successfully had the debtor's second case dismissed. *Id.* On appeal, the debtor argued that he was entitled to a good faith exception under the statute, because he dismissed his Chapter 13 case with the intent to refile for Chapter 11 under advice of his counsel. *Id.* The Fifth Circuit considered debtor's argument that there exists a good faith exception, but it concluded: "[w]hatever may be the answer to that question, it is clear that Hackett would not qualify for such an exception however it might be configured." *In re Hackett*, 233 F.3d at 574. In ruling that the debtor would not qualify for any exception if the statute were interpreted to create one, the Fifth Circuit issued no ruling on what the statute actually means. *Id.*

### This Court's Approach

The analysis must begin with the text: "[T]he debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title." § 109(g)(2). This Court agrees with the court in *In re Payton* that the word "following" finds itself amenable to several definitions and that § 109(g)(2), as it is read, is ambiguous as to the meaning of "following." *See In re Payton* 481 B.R. at 463-65; *see also In re Richardson*, 217 B.R. at 484. Section 109(g)(2) was added to the Code by § 301 of Public Law 98-353, also known as the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub. L. No. 98-353, § 301, 98 Stat. 333, 352 (1984); s*ee also Richardson*, 217 B.R. at 488, n.15. At the time, the provision was entered into the Code as § 109(f)(2), but it has since

been moved to § 109(g)(2).  Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554, § 253, 100 Stat. 3088, 3105 (1986).  Since this Court must analyze the meaning of the statute as it was promulgated to the public at the time of passage, a dictionary that was available to the public at the time of the law's passage will be necessary to the analysis. The 1982 American Heritage Dictionary provides an excellent starting point and defines "follow" as:

> "1.To come or go after: *Follow the usher*"
>
> "5. To be the result of: *A fight followed the argument.*"
>
> "7. To come after in order, time, or position: *Night follows day.*"

*American Heritage Dictionary* 520 (2d College ed. 1982).  The dictionary definitions of "follow" clearly support an understanding of "following" as either chronological or causal. However, unlike the *Payton* Court, this Court does not find that the two readings stand on equal footing, to be resolved by an inquiry into legislative intent.  Section 109(g)(2) establishes three events that, in reality, always take place in a timed manner: a filing, a request for dismissal, and the obtaining of the dismissal.  These three events are established into a relationship through the word "following." Two of the events, the request and obtaining, have an obvious one-way chronological connection that is irrespective of the filing for relief; courts grant dismissals after requests for dismissal. In turn, the request and the obtaining have a relationship with the filing for relief. A chronological reading of "following," establishing a relationship between all three events, is more natural where two of those events already have a natural and salient one-way, chronological relationship.

This Court's reading is further confirmed by the structure of § 109(g) as a whole. The 180-day ineligibility provision of § 109(g) activates where the "first bankruptcy case" meets

either subsection (1) or subsection (2)'s requirements. In § 109(g)(1), the requirement is met where "the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case." Where Congress knows how to say something, courts will presume that Congress would say it for the same effect elsewhere, and Congress's choice not to is instructive. *City of Chicago v. Environmental Defense Fund*, 511 U.S. 328, 338 (1994) (citing *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("it is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another" (internal quotation marks omitted)). Here, if Congress was interested in applying its policy by means of a subjective intent test in "following" under § 109(g)(2), it could have chosen a clearer way of expressing its establishment of a subjective test. Reading a subjective causation test into "following" in § 109(g)(2) is especially troubling, where it stands in such stark contrast against its sister subsection, § 109(g)(1), which is wholly concerned with matters of debtor wrongdoing and motive, flourished by language such as "willful failure." *Compare* § 109(g)(1) *with* § 109(g)(2). These two provisions were enacted together at the same time under the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub L. No. 98-353, § 103, 98 Stat. 333, 352 (1984). This Court will presume that Congress would not draft an obvious intent test using the word "willful" while leaving the courts to divine an intent test out of the word "following" in the very next subsection enacted on the same day. *Id.* Furthermore, Congress has built an intent inquiry into § 109(g)(2) itself, by virtue of requiring that the dismissal be "voluntary," which shows that Congress purposely drafted a clear intent element in § 109(g)(2), while leaving "following" unclear as to whether it established an intent test. Therefore, it is counterintuitive to impute a motive test into "following," which does not naturally lend itself to such an analysis, where the

same subsection (2) avails itself of an intent test for "voluntary" and its sister subsection (1) calls for an intent test in "willful." This Court is not comfortable in injecting an error-prone, subjective, and complex factual test into one word, absent stronger support for such a reading.

The elemental structure of § 109(g)(2) further demonstrates that incorporating a causation reading into "following" would render the statute's terms incoherent. The reason for this stems from the bifurcation of element one, "the debtor requested and obtained the voluntary dismissal of the case," into two sub-elements: (1) request, and (2) obtained . § 109(g)(2). Importantly, the "following" element inures to request and obtain separately. If a debtor were to request dismissal first, and then a creditor files for relief from the stay, and then the court grants the dismissal, § 109(g)(2) would not apply, because only one sub-element, "obtain", "follows." *In re Hicks*, 138 B.R. at 505. The debtor's *request* for dismissal is within the debtor's dominion and control. However, it is only through a court's action that dismissal is approved, ordered, and thus "obtained." 11 U.S.C. § 1307; 11 U.S.C. § 1112; 11 U.S.C. § 707. Since a debtor requests the dismissal (where it is voluntary), reading "following" as a causal relationship makes logical sense, because the debtor controls the request, and thus that request can be "caused" by a filing for relief from stay. However, the *obtaining* of dismissal must also "follow" the filing for relief from stay. A causal reading of "following" would make no logical sense in this context, because it would literally mean that the filing of a request for relief "caused" the court to grant dismissal. Courts generally do not grant dismissal "as a result of" a creditor's filing of a motion for relief from stay after a debtor motions to dismiss "as a result of" a creditor's filing for relief from stay. Rather, a court grants dismissal because a party moves for dismissal. The causal reading would also severely limit the number of cases that § 109(g)(2) would cover, because its requirements would only be satisfied where both the debtor's and court's actions were motivated by the filing

of a motion for relief from stay. The incoherent reading produced by a causal meaning of "following" could only be reconciled by a dual reading, wherein "following" means "because of" with respect to the debtor's action and "following" means "after" with respect to the court's action. It is far more reasonable to read "following" as chronological, where both the voluntary request and the grant of that request by the court must take place after the filing of the motion for relief from stay.

This Court's understanding of Congress's intent is not availing to Debtors' argument. The court in *In re Riekena* found that "[i]t is widely acknowledged that Congress enacted section 109(g)(2) for the purpose of curbing abusive repetitive filings by debtors attempting to nullify a stay relief order entered in a prior case by obtaining a new automatic stay upon refiling." 456 B.R. 365, 368 (Bankr. C.D. Ill. 2011). This Court embraces the *Riekena* court's understanding of Congress's intent. It does not follow that the statute must have a causation test built into "following," just because a causation understanding could more tightly serve the policy interests behind the language. *Id.* at 369 ("Congress intended the broad brush rule"). The court in *In re Payton* resolved the ambiguity of "following" towards a causation reading. 481 B.R. at 467. Part of the *Payton* court's reasoning was that a chronological reading of § 109(g)(2) would not advance the statute's purpose in certain situations. *Id.* at 466. The court offered several examples: (1) if the motion to lift stay had been withdrawn or denied as groundless, (2) if years have passed between the filing of the lift stay motion and the debtor's voluntary dismissal, (3) or the creditor who filed the motion already obtained the property subject to the stay by the time the debtor voluntarily obtained dismissal. *Id.* While recognizing the occasional harshness of a chronological application, this Court declines to reach the same conclusion. First and foremost, this Court believes that "following" in the context of the language alone most obviously reads in

a chronological manner, and so a showing of a few odd outcomes is not enough read an unnatural definition into the statute; the judiciary is not the vanguard of underlying Congressional policy where the language definitively shows the way.  *See Germain*, 503 U.S. at 254.  Second, this conclusion is further comforted by the fact that Congress's policy is merely served in an over-inclusive manner under § 109(g)(2), rather than in a manner plainly contrary to the underlying policy of curbing abusive refilings. Congress is free to choose overbroad methods to serve its policies. Third, the consequences of a chronological reading, as offered by the *Payton* court, are not what this Court would call absurd.  481 B.R. at 466.  If the motion to lift the stay has been withdrawn, it is possible for courts to impute the motion as having never been filed under § 109(g)(2). Therefore, there might be no filing for the voluntary dismissal to "follow" under § 109(g)(2).  If years have passed between the motion to lift stay and the voluntary dismissal, it might seem as though an application of § 109(g)(2) is entirely unrelated to the purpose of combating debtor abuse. However, Debtor abuse can be inadvertent. By the terms of § 109(g), when a creditor seeks relief from the automatic stay, the debtor is put on notice that its right to refile and enjoy the protections of the automatic stay will be impaired for 180 days if the debtor undertakes to voluntarily obtain dismissal. The objective chronological test prevents a debtor from accidentally, but in good faith and honesty, frustrating a creditor's rights. For example, a creditor might file a motion to lift the stay and enter an agreement with the debtor calling for a conditioning of the automatic stay, subject to debtor's performance on specified terms. Years into bankruptcy and years since the motion to lift stay had been filed, the debtor could seek a voluntary dismissal in good faith and with intentions to continue performing pursuant to an agreement with the creditor. However, if that debtor's life changes for the worse, the debtor could seek, again in full honesty and good faith, the protections of bankruptcy. This

hypothetical debtor may have had a cooperative spirit with the creditor, but the harm is the same, because the protection of the automatic stay under 11 U.S.C. § 362 automatically applies from the moment the debtor petitions for bankruptcy protection. Since the purpose of § 109(g)(2) is to combat the mischiefs wrought by the automatic nature of § 362's stay, it is not necessary to read an intentionality component into § 109(g)(2), because a chronological reading can combat both intentional and unintentional frustrations of creditors' rights.  *See Ulmer*, 19 F.3d at 235 ("Congress enacted section 109(g)(2) to prevent debtors from frustrating creditors' efforts to recover funds owed them").  The *Payton* court proposes one final scenario of evil by describing when a creditor lifted the stay, obtained the property, and had no further interest in the case by the time the debtor obtained voluntary dismissal.  481 B.R. at 466.  This Court would be more concerned by this outcome if § 109(g)(2) were solely aimed at personally protecting the rights of the creditor who had filed the motion. However, the spirit of § 109(g)(2) is broader, as it is structurally built to protect the integrity of the bankruptcy process and all creditors from intentional or unintentional abuses. In fact, a "because of" reading of "following" could produce odd situations of its own. Under a causation test, which does not require the cause to be before the effect where the execution of events is concerned, a debtor can be accused of moving for voluntary dismissal in *anticipation of* a creditor filing a motion for relief from the automatic stay; a creditor would simply need to claim that the request for dismissal was caused by the anticipated filing that it eventually lodged before dismissal was granted. This would frustrate judicial economy objectives, as numerous objections could ensue based on perceived abuses by debtors. This Court declines to encourage such an outcome. The spirit of the statute is in congruence with a chronological reading of "following" in § 109(g)(2).

A review of other bankruptcy code provisions fortifies the argument that Congress would

have chosen another word had it meant to establish a subjective causation test or a good faith exception. Section 362 contains several good faith exceptions. Under § 362(d)(4), a creditor may seek relief from the automatic stay if it affirmatively establishes that the bankruptcy petition "was part of a scheme to delay, hinder, or defraud creditors," which evinces a test that is almost wholly reliant on showing a subjective state of mind. Similarly, under § 362(c)(3), the automatic stay can be terminated where the debtor refiles for bankruptcy within a prescribed time frame, a situation very similar to the refiling bar in § 109(g). However, § 362(c)(3) explicitly allows for a good faith exception to continue the operation of the stay, while §109(g) offers no such good faith language to preserve the debtor's eligibility for refiling. *Compare* § 362(c)(3) *with* § 109(g). When Congress amended § 362(c) with the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 using "good faith" exception language, it had the opportunity to amend the 1984 language of § 109(g)(2) to more clearly establish a subjective test, yet it chose not to. Pub. L. No. 109-8, § 302, 119 Stat. 23, 75; *see also* Ned H. Waxman, *Judicial Follies: Ignoring the Plain Meaning of Bankruptcy Code § 109(g)(2)*, 48 Ariz. L. Rev. 149, 167-68 (2006).  This Court will assume that Congress is satisfied with the way in which the majority of courts apply a chronological standard to § 109(g)(2). This Court joins the majority view that has embraced a chronological reading of "following" in § 109(g)(2).  *Andersson*, 209 B.R. at 77 (impliedly embracing the chronological test by a "mandatory" application); *In re Steele*, 319 B.R. 518, 520 (E.D. Mich. 2005) ("Once a motion for relief from stay has been filed, if a debtor chooses to voluntarily dismiss his case, he cannot file another case for 180 days following the dismissal."); *In re Dickerson*, 209 B.R. 703, 706 (W.D. Tenn. 1997) (rejecting a causal reading and finding the statute mandatory); *Kuo v. Walton*, 167 B.R. 677, 679 (M.D. Fla. 1994) (impliedly embracing the chronological test by finding the statute mandatory); *In re Munkwitz*, 235 B.R. 766, 768

(E.D. Pa. 1999) (finding that "following" means "coming after" or "next order in time"); *Richardson*, 217 B.R. at 486 (finding that "following" means "after"); *In re Jarboe*, 177 B.R. 242, 246 (Bankr. D. Md. 1995) (impliedly embracing the chronological test in applying the plain language of the statute to bar debtor's refiling); *In re Redwood*, 2011 WL 2456785 *1 (Bankr. D. R.I. June 16, 2011) (impliedly assuming that "following" means "after"); *Riekena*, 456 B.R. at 369 (concluding that Congress intended the broad brush rule embodied in a chronological reading); *In re Stuart*, 297 B.R. 665, 668 (Bankr. S.D. Ga. 2003) (finding that the statute affords no inquiry into debtor's intent); *In re Denson*, 56 B.R. 543, 545 (Bankr. N.D. Ala. 1986) (embracing the chronological reading of "following"); *Hicks*, 138 B.R. at 505 (taking as given that the framework is chronological and proceeding to grant relief on the basis that only the court's grant of dismissal, not the request, had followed the filing of relief).

Perhaps if this Court were faced with a supremely unfair outcome, it could turn to the doctrine of absurd consequences on a case-by-case basis as applied. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982) (cited by *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." (internal quotation marks omitted)). Suffice it to say that this Court declines to rewrite § 109(g) under the facts of this case. Debtors have *voluntarily* sought and obtained dismissal just several months after a creditor, showing no evidence of wrongdoing, filed a motion for relief from the automatic stay. Debtors are not forever barred from refiling for bankruptcy. These are not the kinds of facts that move courts to offer relief from the plain terms of a statute.

Turning to whether § 109(g)(2) contains a good faith exception, this Court finds no

evidence that Congress meant for an implicit exception to exist beyond its language. Evidence that § 109(g)(2) serves a general policy interest of curbing abusive filing in an overbroad manner is not enough to convince this Court that Congress invited the judiciary to override the plain meaning and operation of the language of this provision, especially just so that its applicability to debtors may become slightly more tailored towards its spirit. As this Court explained, the outcomes attendant to an overbroad § 109(g)(2) are not drastically at odds with its spirit as to warrant the reading requested by Debtors. This Court also explained that Congress has explicitly included a "good faith" exception in § 362(c)(3), while § 109(g)(2) contains no such exception. Section 109(g)(2) is well served by its language, and Congress spoke of good faith in § 362(c)(3) without speaking of good faith in § 109(g)(2). This Court declines the invitation to read a good faith exception into § 109(g)(2).

Under the principles adopted by this Court, the case becomes very simple. A creditor filed a motion for relief from the automatic stay. Thereafter, Debtors voluntarily moved for dismissal of their case, which this Court granted. Section 109(g)(2) most certainly applies to the facts of this case, and thus the entry of dismissal with prejudice pursuant to § 109(g) was proper. However, Debtors suggest one additional method of relief that is analytically distinct from the principles of understanding "following" or applying a good faith exception.

### 2.  Understanding "the filing of"

Debtors rest much of their argument on the fact that the creditor's motion for relief from stay was no longer before or "pending" before this Court.  [ECF No. 72 P. 5-6].  This Court reads this assertion as evidence of Debtors' claim that the creditor's motion for relief from stay did not cause Debtors to voluntarily dismiss their case. Since "following" has a chronological meaning, the causation question is irrelevant. However, the issue of whether a motion for relief

from the automatic stay is still pending before the court at the time of voluntary dismissal may have some significance for the purpose of § 109(g)(2). The argument, as explored in *dictum* by the Fifth Circuit in *Ulmer*, is as follows: if the motion for relief from the automatic stay has been disposed of, then there is simply nothing for the voluntary dismissal to follow. *Matter of Ulmer*, 19 F.3d at 236, n.9.  Courts that have adopted the strongest method of relief via this argument have been referred to as the "pending" courts. *In re Richardson*, 217 B.R. at 485.  A reading of § 109(g)(2) according to the "pending" logic is quite troubling. If a court grants a motion for relief from the automatic stay, the motion would technically no longer be pending before the court. However, if this meant that § 109(g)(2) could not apply, the debtor would be free to voluntarily dismiss its case and refile with impunity, thus frustrating the creditor's rights and the public policy purposes of § 109(g).  *Id.*  This Court does not believe that the pending approach could possibly provide the correct reading of § 109(g)(2). The plain language of § 109(g)(2) provides that the voluntary dismissal has a connective, "following" relationship with "the *filing* of a request for relief from the automatic stay."  § 109(g)(2) (emphasis added).  The voluntary dismissal "*follows*" a "*filing*," not a "*motion still pending*."  *Id*.  There is no language about whether the motion is granted. Where the motion for relief from the automatic stay is withdrawn by the creditor or denied by a court, then perhaps the court can deem the motion to have never been filed.  *See In re Hackett*, 1999 WL 294797 at *4.  If there is no filing, then a voluntary dismissal cannot follow it. However, this Court has no occasion to dispositively rule on that question, because the facts of this case assuredly would not entitle Debtors to relief under a "pending" approach. There was a motion for relief from stay filed in this case. That motion led to an agreed order, whereby the automatic stay would automatically lift if Debtors failed to meet the agreed conditions. In effect, it is as though the motion for relief from stay was granted upon

Debtor's failure to meet the conditions. Debtors thereafter voluntarily requested and obtained dismissal of their case.   Therefore, it is an appropriate application of § 109(g) to grant the dismissal with prejudice, as the requirements of the section were met.

## II.   Conclusion

For the reasons stated above, this Court finds that a chronological reading of the statute is correct, and Debtors' case meets its requirements. Therefore, an entry of dismissal with prejudice, pursuant to 11 U.S.C. § 109(g), is proper. The Debtor's Motion to Reconsider, as amended, is **DENIED**.

A separate Order consistent with this Opinion shall be issued simultaneously herewith.

SIGNED 09/09/2015.

Eduardo V. Rodriguez
United States Bankruptcy Judge